**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Clarence Haas,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-24-03212-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Clarence Haas's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("SSA," "Commissioner," or "Defendant") denial of Social Security benefits. The appeal is fully briefed (Docs. 11, 15, 16), and the Court now rules.

**I.     BACKGROUND**

    **A. Factual Overview**

Plaintiff was 50 years old on his alleged disability onset date of February 7, 2020. (Doc. 11 at 2). He has past relevant work as a Deliverer Outside. (Doc. 9-3 at 39). On December 8, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (*Id.* at 24). Denial of Plaintiff's claim occurred initially on April 17, 2023, and upon reconsideration on June 28, 2023. (*Id.*) Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ"), which occurred by telephone on November 3, 2023. (*Id.*) An impartial vocational expert (VE) also appeared and testified in the hearing. (*Id.*) The ALJ issued a decision on March 28, 2024, finding

Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (*Id.* at 41). On October 2, 2024, the SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision and adopted the ALJ's decision as final. (Doc. 9-3 at 2).

### B. The SSA's Five-Step Evaluation Process

To qualify for Social Security Disability Insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ

must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is his ability perform physical and mental work activities "despite his limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "his past relevant work." *Id*. §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the final step, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

Here, at Step One, the ALJ concluded that the record established that Plaintiff had "not engaged in substantial gainful activity since February 7, 2020, the alleged onset date." (Doc. 9-3 at 26).

At Step Two, the ALJ determined that Plaintiff had the following severe impairments: "scoliosis, right shoulder rotator cuff tendinosis, bilateral hip arthritis, migraine headaches, and obesity." (*Id.* at 27).

At Step Three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment in Appendix 1 to Subpart P of 20 C.F.F. Part 404. (*Id.* at 32). Subsequently, the ALJ determined that

Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b), except that Plaintiff:

> can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. [He] can frequently climb ramps and stairs, but occasionally climb ladders or scaffolds. [He] can frequently reach with the right upper extremity and must avoid concentrated exposure to hazards.

(*Id.* at 34).

At Step Four, the ALJ concluded that Plaintiff capable of performing past relevant work as a Deliverer Outside, and he also concluded that this work did not require performing work-related activities that were precluded by Plaintiff's RFC. (*Id.* at 39). At Step Five, the ALJ found that Plaintiff could make sufficient adjustments to perform other work that exists in significant numbers in the national economy given his age, education, work experience, and RFC. (*Id.*) Examples of such jobs included Marker, Cleaner Housekeeping, and Inspector Hand Packager. (*Id.* at 40). Accordingly, the ALJ concluded that Plaintiff was not disabled, "as defined in the Social Security Act, from February 7, 2020, through the date of [the] decision." (*Id.* at 41).

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). "Substantial" evidence involves "more than a mere scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995,

1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if, despite the legal error, 'the agency's path may reasonably be discerned ....'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted).

### III.   DISCUSSION

Plaintiff raises three issues in this appeal, claiming that the ALJ allegedly erred by: (1) failing to provide reasons based on supportability and consistency when rejecting PA Joy's opinion; (2) failing to provide an adequate explanation for rejecting Dr. Scavetta's opinion that Plaintiff is limited to frequent reaching; and (3) failing to provide reasons based on supportability and consistency when rejecting Dr. Worsley's opinion. (Doc. 11 at 5–10).

#### A. Legal Standard for Evaluation of Medical Opinions

Courts in the Ninth Circuit previously distinguished among treating physicians, examining physicians, and non-examining physicians, generally giving the greatest weight to the opinions of treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was referred to as the "treating physician rule." *See Regula v. Delta*

*Family-Care Survivorship Plan*, 266 F.3d 1130, 1139 (9th Cir. 2001), *cert. granted*, *vacated sub nom. Regula v. Delta Family-Care Disability & Survivorship Plan*, 539 U.S. 901 (2003). However, "in March of 2017, the [SSA] amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, *5852–57 (Jan. 18, 2017)). Claims filed on or after March 27, 2017, must adhere to the amended regulations. *Id.* These regulations state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from … medical sources." 20 C.F.R. §§ 404.1520c, 416.920c.

In addition to the abrogation of the "treating physician rule," as of March 2017, the amended SSA regulations specify that the ALJ must "consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources." *Alonzo*, 2020 WL 1000024, at *3. Supportability and consistency are the "most important factors," and the ALJ must explain how he considered the evidence in light of these two factors for a medical source's opinions. 20 C.F.R § 404.1520c(b)(3).

Moreover, the Ninth Circuit recently determined that in cases governed by the amended SSA regulations above, the "specific and legitimate" standard is also no longer applicable. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In *Woods*, the Ninth Circuit concluded the following:

> Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Id.* (quotations and internal citations omitted). Subsequently, it is not required that an ALJ provide "specific and legitimate reasons" to reject a treating physician's assessment. *Id.* at

791.

As discussed previously, the ALJ, not the reviewing court, is responsible for resolving ambiguities and conflicts in medical testimony and the medical record. *See Andrews*, 53 F.3d at 1039. Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630; *see also Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ") (citations omitted).

**B. Physician Assistant Joy**

Christine Joy, Physician Assistant ("PA"), conducted a consultative examination of Plaintiff on March 16, 2023. (Doc. 9-3 at 35). The ALJ wrote the following regarding PA Joy's medical opinion:

> [PA] Joy indicated that the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; sit for two hours but less than six hours in an eight hour day; does not need an assistive device to ambulate; does not have any neurological deficits; can occasionally climb, stoop, kneel, crouch, crawl, and reach; frequently balance; and should not work around temperature extremes, chemicals, dust, fumes, gases, or excessive noise. The examiner indicated that the claimant suffers from severe fatigue and cannot complete an eight-hour day or 40-hour workweek (14F).[1] The undersigned does not find this assessment fully persuasive, as it places the claimant at a sedentary exertional capacity with occasional reaching. Furthermore, the assessment was not supported by her own examination of the claimant, which revealed virtually normal findings. The assessment is inconsistent with the most recent

---

[1] Regarding the ALJ's statement here, in the report of PA Joy's examination, there are instructions that state, "*If* your claimant suffers from severe fatigue and cannot complete an 8-hour day or 40-hour work week, please comment on what findings you have based this conclusion." (Ex. 14F at 5) (emphasis added). However, in the report, PA Joy did not indicate either way whether Plaintiff has severe fatigue or could not work for an 8-hour day or 40-hour work week; nor did she comment on any findings on which to base that conclusion. (*Id.*) Nonetheless, in his opening brief, Plaintiff did not challenge the accuracy of the ALJ's above statement, and the Court therefore finds this issue waived. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (deeming an argument not made in a disability claimant's Opening Brief to be waived).

- 7 -

> x-rays and other examinations throughout the record, which revealed only mild findings (13F, 19F, 22F). His straight leg raise test was normal. The claimant reported pain with palpation and movement of the right shoulder, hip, and lumbar spine. However, the examination was virtually normal (14F/5).

(Doc. 9-3 at 37).

Plaintiff's primary contention with the ALJ's assessment of PA Joy's opinion appears to be that he erred in rejecting her opinion that Plaintiff is limited to frequent reaching. (Doc. 11 at 7). Plaintiff argues that the ALJ fails to explain how the medical evidence he cites is inconsistent with PA Joy's opined reaching limitation and that he "ignores [PA Joy's opined] reaching limitation entirely." (*Id.* at 8). However, the Court disagrees.

First, it is apparent that in his decision, the ALJ accounted for Plaintiff's right shoulder conditions and their impact on Plaintiff's reaching limitation. In describing the RFC, the ALJ stated: "[Plaintiff's *rotator cuff tendinosis and arthritis* were accounted for in the residual functional capacity in that [Plaintiff] can *frequently reach with the right upper extremity* and can only occasionally climb ladders and scaffolds." (Doc. 9-3 at 38) (emphasis added).

Additionally, in the paragraph immediately preceding his assessment of PA Joy's opinion, the ALJ found persuasive the opinion of Dr. Mikhail Bargan, a state agency medical consultant. (Doc. 9-3 at 37). Dr. Bargan opined that Plaintiff was limited to frequent reaching with the right upper extremity. (*Id.*) In support of his finding that Dr. Bargan's opinion was persuasive, the ALJ stated that it was consistent with "no evidence of significant glenohumeral joint effusion or loose bodies in the synovial place (19F/2)" and "mild acromioclavicular and glenohumeral joint arthrosis (19F/4)." (*Id.*) (citing, respectively, the results of MR and CR imaging of the right shoulder at Exhibit 19F).

Correspondingly, the ALJ cited the same imaging of Plaintiff's right shoulder at Exhibit 19F to discount PA Joy's opinion, which limited Plaintiff to occasional reaching. (*Id.*) Specifically, the ALJ stated, "The undersigned does not find this assessment fully

1    persuasive, as it places [Plaintiff] … at occasional reaching…. The assessment is
2    inconsistent with the most recent x-rays and other examinations throughout the record
3    which revealed only mild findings." (*Id.*) (referring to the right shoulder imaging at Ex.
4    19F and the results of an MRI of Plaintiff's right shoulder at Ex. 22F, which revealed "right
5    shoulder rotator cuff tendinosis with degenerative labral tear and mild arthritis.").

6    Considering the foregoing in aggregate, the ALJ's reasoning for rejecting the
7    occasional reaching limitation is reasonably determinable: abnormal results revealed by
8    Plaintiff's right shoulder imaging at Exhibits 19F and 22F were "only mild" (*Id.*), and
9    therefore consistent with Dr. Bargan's opinion that Plaintiff was limited to frequent
10   reaching, but inconsistent with PA Joy's opinion that Plaintiff was limited to occasional
11   reaching. *See Labine v. Comm'r of Soc. Sec. Admin.*, No. CV-19-04528-PHX-JZB, 2020
12   WL 6707822, *4 (D. Ariz. Nov. 16, 2020). ("The court reads the ALJ's decision as a whole,
13   and not just one sentence of it in a vacuum. Thus, based on the ALJ's earlier analysis ...
14   the Court can 'reasonably discern' what evidence the ALJ is referring to when stating that
15   [the evidence is unsupportive or inconsistent]."); *Lewis*, 236 F.3d at 513 (finding an ALJ
16   is required to discuss and evaluate the evidence that supports his or her conclusion but the
17   ALJ is not required to do so under any specific heading).

18   The Court recognizes that the ALJ's explanation could have been clearer. However,
19   the ALJ cited sufficient evidence from the record and PA Joy's opinion to allow the Court
20   to reasonably determine the ALJ's reasoning for his rejection of PA Joy's opined reaching
21   limitation. *See Brown-Hunter*, 806 F.3d at 492 (stating a reviewing court will uphold an
22   ALJ's decision when his "path may be reasonably discerned, even if [he] explains his
23   decision with less[-]than[-]ideal clarity."). Though Plaintiff advocates for an alternate
24   interpretation of this evidence, he fails to show the ALJ's is unreasonable. *Thomas*, 278
25   F.3d at 954 ("[w]here the evidence is susceptible to more than one rational interpretation
26   … the ALJ's conclusion must be upheld."). In effect, the ALJ's decision to discount PA
27   Joy's opinion that Plaintiff was limited to occasional reaching is supported by substantial
28   evidence. *See Thomas*, 278 F.3d at 954 (stating substantial evidence is relevant evidence

that "a reasonable mind might accept as adequate to support a conclusion."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (indicating that an ALJ may discount a medical opinion based on inconsistency with the medical evidence).

Plaintiff also argues that the ALJ's analysis of supportability is flawed because he "mischaracterized" PA Joy's examination results as "virtually normal" and omitted "relevant portions" of abnormal findings from PA Joy's exam. (Doc. 11 at 7–8). Regarding the supportability analysis of PA Joy's opinion, the ALJ states, "the assessment was not supported by her own examination of the claimant, which revealed virtually normal findings." (Doc. 9-3 at 37). Earlier in his decision, the ALJ describes PA Joy's examination of Plaintiff as follows:

> On March 16, 2023, the claimant underwent a consultative examination with Christine Joy, PA. At that time, the claimant indicated that he had been sober from alcohol since October 31, 2021. The claimant alleged having scoliosis and arthritis in the hip. The claimant further stated that he has not [undergone] any injections and has not been evaluated by a specialist. He was taking over-the-counter medications and muscle relaxers, which is very conservative care. He was cooperative with the examiner and in no acute distress. The claimant did not use any assistive devices. He was able to stand, walk to the examination table, and get on/off the table. He was able to stand without difficulty and lift each foot off the ground as well as stand without assistance. He demonstrated normal balance on his heels, toes, and tandem walking. There were no neurological deficits present. An examination of his head, ears, eyes, nose, and throat revealed unremarkable findings. His pulmonary and cardiovascular functioning appeared normal. The claimant's strength in the upper and lower extremities was rated a five on a five-point scale and his grip strength was normal. In addition, the claimant's extremity muscle bulk was normal without atrophy. The claimant's sensory examination in the upper extremities and lumbar plexus nerves was normal. The claimant's fine motor skills were within normal limits. His musculoskeletal examination was normal. There was no gross deformity of the thoracic or lumbar spine. Of note, there was no significant scoliosis upon evaluation. His straight leg raise test was normal. The claimant reported pain with palpation and

>  movement of the right shoulder, hip, and lumbar spine. However, the examination was virtually normal (14F/5).

(*Id.* at 35).

The Court notes that in describing PA Joy's examination, the ALJ included Plaintiff's subjective reports of "pain with palpation and movement of the right shoulder, hip, and lumbar spine." (*Id.*) However, the ALJ did not report PA Joy's abnormal objective examination findings of reduced range of motion in Plaintiff's right shoulder, left hip, and lumbar spine; positive Hawkins test in the right shoulder; nor antalgic gait. (*Id.*) Nonetheless, an ALJ is not required to "discuss every piece of evidence" in "interpreting the evidence and developing the record." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). And the ALJ's description of PA Joy's examination as "*virtually* normal"—not "*entirely* normal"—indicates that while the ALJ did not explicitly report PA Joy's abnormal objective examination findings in his decision, he did consider them in his supportability analysis of her opinion.

In addition, the record shows that the majority of PA Joy's findings in her examination of Plaintiff were "normal," "within normal limits," or negative for abnormality, including, but not limited to, results corresponding to Plaintiff's gait and station, strength and tone of the upper and lower extremities, passive range of motion in the right shoulder and right hip, and lack of pain with both straight leg-lift and hip flexion. (Ex. 14F at 2–5). Thus, the ALJ's interpretation of PA Joy's examination as "virtually normal" is rational, and "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Likewise, it is not illogical to conclude that PA Joy's normal findings in the areas of strength in the lower extremities, passive range of motion in the right hip, and hip flexion do not provide support for her opinion that Plaintiff can only "sit for two hours but less than six hours in an eight[-]hour day." (Doc. 9-3 at 37) (citing Ex. 14F). As such, the ALJ's conclusion that PA Joy's opinion was "not supported by her own examination" suffices as substantial evidence to find the opinion "not fully

persuasive." *Chavez v. Dudek*, No. 23-434, 2025 WL 999099, *1 (9th Cir. Apr. 3, 2025) (concluding that lack of support from a medical provider's own physical examination of a claimant serves as substantial evidence to discount the provider's medical opinion).

In sum, the Court finds that Plaintiff fails to show error in the ALJ's analysis of PA Joy's opinion. *Saenz v. Comm'r of Soc. Sec. Admin.*, No. CV-24-01555-PHX-JAT, 2025 WL 829780, *3 (D. Ariz. Mar. 17, 2025) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)) ("It is Plaintiff's burden to show harmful error.").

### C. Dr. Scavetta

Karen Scavetta, M.D., a state agency medical consultant, examined Plaintiff on April 13, 2023. (Doc. 9-3 at 36). Regarding Dr. Scavetta's opinion, the ALJ wrote as follows:

> [Dr. Scavetta] indicated … that the claimant could lift/carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk six hours in an eight hour day; sit six hours in an eight hour day; occasionally perform all postural activities but never climb ladders, ropes, or scaffolds; limited to reaching with the right upper extremity to occasional; and should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dust, gases, and poor ventilation; and should avoid all exposure to hazards (2A). The undersigned does not find this assessment fully persuasive as it does not allow for greater restriction regarding shoulder and hip problems. Additional evidence was admitted into the record subsequent to Dr. Scavetta's assessment that would limit the claimant to a light rather than medium exertional capacity. However, Dr. Scavetta supported her assessment of the claimant with the evidence available to her at the time of the review, which revealed strength of five on a five-point scale in all extremities and a stable gait. In February 2023, the claimant was noted as having only mild arthrosis in the right shoulder upon x-ray (2A/11). The assessment is not consistent with the most recent evidence, which would place the claimant at a light rather than medium exertional capacity. Specifically, the assessment is inconsistent with reports by the claimant indicating lower back pain. He continued to treat the pain with ibuprofen and Tylenol. He indicated having headaches and right leg pain as well (36F/5, 37F/2).

(Doc. 9-3 at 36).

As Defendant notes, Plaintiff does not challenge the ALJ's rejection of Dr. Scavetta's opinion that Plaintiff is limited to a medium exertional capacity. (Doc. 15 at 7; Doc. 11 at 5–7). Instead, as with PA Joy above, Plaintiff takes issue with the ALJ's rejection of Dr. Scavetta's opinion that Plaintiff is limited to occasional reaching with the right upper extremity. (Doc. 11 at 5–7). However, as discussed above, the ALJ's conclusion that Plaintiff is limited to frequent rather than occasional reaching is supported by substantial evidence. *Supra* Section III.B; *see Magallanes*, 881 F.2d at 755 ("As a reviewing court,… [i]t is proper for us to read [ ] paragraph[s] discussing [ ] findings and opinion[s], and draw inferences relevant to [other] findings and opinion[s]").

Consequently, the Court finds the ALJ committed no harmful legal error in discounting Dr. Scavetta's opinion that Plaintiff is limited to occasional reaching.

**D. Dr. Worsley**

Jacqueline Worsley, Psy.D., conducted a consultative examination of Plaintiff on March 25, 2023. (Doc. 9-3 at 28). Regarding Dr. Worsley's medical opinion, the ALJ wrote:

> Dr. Worsley indicated that the claimant had no significant limitations with regard to his ability to understand, remember, and engage in social interaction. She noted that the claimant had the ability to carry out simple instructions and maintain attention for shorter segments of time. Dr. Worsley indicated that the claimant would have difficulty understanding more detailed instructions and concentrating for extended periods. He has the ability to maintain regular attendance; he would not be able to complete a full workweek without the interruption of symptoms (20F). The undersigned does not find the assessment by Dr. Worsley persuasive, as she limits him to simple and detailed tasks and inability to respond appropriately. These are not functional limitations.
>
> Furthermore, the assessment was not supported by her own examination of the claimant which revealed normal findings as noted above. She appeared to rely on the claimant's

>subjective complaints rather than objective medical evidence when rendering her assessment. The assessment is inconsistent with the claimant's own testimony that he is active in his family, walks his dog, engages in daily wellness practices, and is independent in his daily activities (Testimony). Moreover, the assessment is inconsistent with treatment notes, which revealed improvement in symptoms with therapy (33F). Furthermore, treatment notes revealed normal behavior, thought content, judgment, and normal mental status examination findings (2F/20, 4F). The claimant was noted as clinically stable and encouraged to continue on fluoxetine (3F/9).

(Doc. 9-3 at 31).

Plaintiff claims that the ALJ erred in rejecting Dr. Worsley's opinion because he failed to provide reasons based on consistency and supportability. (Doc. 11 at 8). As the source of the ALJ's said failure, in short, Plaintiff points to the ALJ's purported misinterpretation and misstatement of Dr. Worsley's opinion. (*See id.* at 8–10). Plaintiff further maintains that these alleged errors were not harmless "because [the rejection of Dr. Worsley's opinion] is the basis of the non[-]severe mental impairment finding." (*Id.*) However, the Court finds Plaintiff's argument is without merit. Even if, as Plaintiff alleges, the ALJ did indeed err in rejecting Dr. Worsley's opinion, said rejection was not the sole basis for the ALJ's conclusion that Plaintiff's mental impairments were non-severe. Rather, in reaching this conclusion, the ALJ reasonably considered and analyzed ample record evidence, including other medical opinions, medical records, and Plaintiff's self-reports. (Doc. 9-3 at 30–32).

As previously discussed, at Step Two of the sequential evaluation process, a claimant must prove that he has an impairment that is so severe that it "significantly limits [his] physical and mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011); *see also* 20 C.F.R. § 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). An ALJ's

Step-Two determination will be upheld when substantial evidence supports his finding that a claimant's impairment is non-severe. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). The substantial evidence threshold in this context "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Here, at Step Two, the ALJ considered the medical opinions of state agency medical consultants Elliott Salk, Ph.D., and Anna Titus, Ph.D.. (Doc. 9-3 at 31). Both doctors opined that Plaintiff did not have any severe mental impairments, and the ALJ found both opinions persuasive, providing reasons based on supportability and consistency. (*Id.*) Notably, in his briefing, Plaintiff does not challenge the opinions of either Dr. Salk or Dr. Titus, nor does Plaintiff contend that the ALJ should not have relied on these opinions.[2] (*See generally* Doc. 11). These opinions serve as substantial evidence to support the ALJ's conclusion that Plaintiff's mental impairments were not severe. *See Jeffries v. Comm'r of Soc. Sec. Admin.*, No. CV-24-00323-PHX-KML, 2025 WL 555587, *2 (D. Ariz. Feb. 20, 2025) (concluding, when the ALJ found persuasive two doctors' medical opinions stating that a claimant's mental impairments were not severe, and when Plaintiff did not challenge the opinions nor the ALJ's reliance on them, that this was substantial evidence to support the ALJ's non-severe mental impairment finding); *see also Thomas*, 278 F.3d at 954 (stating substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion.").

Further, insofar as Dr. Worsley's opinion conflicts with the opinions of Drs. Salk and Titus, it is not the duty of this Court to resolve such conflicts. *See Andrews*, 53. F.3d at 1039 (stating that it is the ALJ's responsibility to resolve ambiguities in the medical record and conflicts in medical testimony). And while Plaintiff advocates for an interpretation of the evidence more favorable to Plaintiff, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn*, 495 F.3d 630 (9th Cir. 2007); *Batson*, 359 F.3d 1190, 1198 (9th Cir. 2004)

---

[2] Thus, this argument is waived. *Carmickle v. Comm'r, Soc.Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (explaining that a claimant waives an issue by failing to argue it "with any specificity" in his opening brief).

- 15 -

("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").

In sum, substantial evidence supports the conclusion that Plaintiff's mental impairments were non-severe, notwithstanding the ALJ's treatment of Dr. Worsley's opinion. Accordingly, the Court finds that Plaintiff has failed to show harmful error on the part of the ALJ.

### E. Alternative Proceedings

Plaintiff asks the Court to remand this matter for further proceedings. The Court declines to do so because the Court is affirming the ALJ's decision.

### IV. CONCLUSION

Considering the above,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 27th day of May, 2025.

_____
James A. Teilborg
Senior United States District Judge